## In re NORTHWEST AIRLINES CORP., et al., ANTITRUST LITIGATION

### Master File No. 96–74711.

United States District Court,
E.D. Michigan,
Southern Division.

May 4, 2004.

Elwood S. Simon, Elwood S. Simon Assoc., Birmingham, MI, Robert S. Palmer, Burt & Pucillo, West Palm Beach, FL, Barry S. Taus, Garwin, Bronzaft, Bruce E. Gerstein, Garwin, Bronzaft, New York, NY, Donald L. Bramlage, Jr., Farmington Hills, MI, John P. Zuccarini, Elwood S. Simon Assoc., Birmingham, MI, Marvin A. Miller, Miller, Faucher, Chicago, IL, Noah J. Silverman, Garwin, Bronzaft, New York, NY, Patrick E. Cafferty, Miller, Faucher, Ann Arbor, MI, Robert I. Harwood, Wechsler Harwood, New York, NY, Susan C. LaCava, Madison, WI, for Plaintiffs.

Donald L. Flexner, Boies, Schiller, James P. Denvir, Boies, Schiller, Washington, DC, Mary B. Kelly, Dickinson Wright, Bloomfield Hills, MI, Parker C. Folse, III, Susman Godfrey, Seattle, WA, Kenneth J. McIntyre, Dickinson Wright, Lawrence G. Campbell, Dickinson Wright, Detroit, MI, for Defendants.

### ORDER CERTIFYING CLASSES AND SUBCLASSES

ROSEN, District Judge.

In a prior Opinion and Order in this action, the Court granted Plaintiffs' motion for class certification, but observed that certain subsidiary issues remained to be resolved. *See In re Northwest Airlines Corp. Antitrust Litigation,* 208 F.R.D. 174, 227–28 & n. 47 (E.D.Mich.2002). One such matter concerned the necessity of subclasses for each hub airport encompassed within Plaintiffs' antitrust claims under § 2 of the Sherman Act, 15 U.S.C. § 2. *See In re Northwest Airlines Corp.,* 208 F.R.D. at 221 n. 41, 227 n. 46. The parties have addressed this issue in subsequent submissions, with each side arguing (albeit on quite different grounds) that such subclasses would not be appropriate. For the reasons set forth briefly below, the Court disagrees, and remains persuaded that distinct hub-specific subclasses are necessary.

The Defendant Airlines' objections on this point are easily resolved. Just as they argued in opposition to Plaintiffs' underlying motion for class certification, the Airlines again contend that *many more* subclasses are necessary, one for each of the over 200 city-pair routes at issue, and that no hub-based market analysis is possible. The Court already has rejected this argument, noting that "the core premise of Plaintiffs' Section 2 claims" is that hidden-city savings opportunities are the product of "hub premiums" imposed by the Defendant Airlines by virtue of their alleged monopoly power at their hubs. *In re Northwest Airlines Corp.,* 208 F.R.D. at 220. The Airlines have not even addressed the specific question now before the Court—namely, whether it is neces-

sary to create a separate subclass for each hub.

Plaintiffs have squarely addressed this issue, however, arguing that such subclasses are inappropriate. In particular, Plaintiffs have identified several issues which, in their view, are common to the claims of all class members, regardless of the hub involved in their travel. These include: (i) how the development of hub-spoke networks purportedly has led to the aggregation of monopoly power at all of the Defendant Airlines' hub airports; (ii) the type, nature, and significance of entry barriers at these hub airports; (iii) the significance of the existence of hidden-city savings opportunities for routes originating or terminating at these airports; and (iv) the validity of Plaintiffs' theory of using hidden-city fares as a benchmark for the hub premiums imposed on hub-spoke passengers. Given these commonalities which do not turn upon conditions at one hub versus another, Plaintiffs argue that subclasses are not necessary.

This contention, however, overlooks the important issues which *do* turn upon conditions at a particular hub. Most significantly, a prerequisite of Plaintiffs' § 2 claims is that the Defendant Airlines must have monopoly power at their hubs, and Plaintiffs propose to establish this through a combination of market share and barriers to entry at these hubs. These factors can (and presumably do) vary from hub to hub. This creates the possibility that the trier of fact could conclude, for example, that Defendant Northwest has monopoly power at its Detroit hub, but not its Memphis hub. If this is the case, a named plaintiff who flew only out of Memphis (and thus could not sustain a § 2 claim) would not be an adequate representative of class members who flew out of Detroit (who could, if properly represented, meet their burden of establishing monopoly power).

Consequently, the Court finds that hub-specific subclasses are necessary for Plaintiffs' § 2 claims. Accordingly, as stated at a recent status conference, the Court instructs Plaintiffs' counsel to promptly identify representatives for each of these subclasses, because the present collection of named plaintiffs does not encompass each of the hub airports at issue in this litigation. In addition, having resolved this outstanding issue regarding the proper definition of the classes and subclasses in this case,

NOW, THEREFORE, IT IS HEREBY ORDERED, pursuant to Fed.R.Civ.P. 23(a) and (b)(3), that the following classes be certified in this action:

## I. *Section 1 Class*

All persons or entities (excluding Defendants and their parents, subsidiaries, and affiliates) who purchased from a Defendant Airline or its agent one or more unrestricted, full fare tickets for airline passenger service on an Affected City–Pair Route, as defined in Exhibit A to Plaintiffs' motion for class certification. The class period continues to date and begins (i) October 10, 1992 for passengers of Defendant Northwest, (ii) May 18, 1995 for passengers of Defendant U.S. Airways, and (iii) June 11, 1995 for passengers of Defendant Delta.

## II. *Section 2 Classes*

### A. *Northwest/Minneapolis Subclass*

All persons or entities (excluding Defendants and their parents, subsidiaries, and affiliates) who purchased from Defendant Northwest or its agent one or more unrestricted, full fare tickets for airline passenger service on a Northwest Affected City–Pair Route [1] originating or terminating at Northwest's Minneapolis hub airport ("MSP"), excluding any shared hub-to-hub routes.[2] The class period begins on October 10, 1992 and continues to date.

### B. *Northwest/Detroit Subclass*

All persons or entities (excluding Defendants and their parents, subsidiaries, and

---

1. Again, these Affected City–Pair Routes are set forth in Exhibit A to Plaintiffs' motion for class certification.

2. As stated in Plaintiffs' motion for class certification, a shared hub-to-hub route is a route be-

tween the hub of a Defendant Airline and the hub of any other airline. These routes are included in the Section 1 class but excluded from the Section 2 classes.

affiliates) who purchased from Defendant Northwest or its agent one or more unrestricted, full fare tickets for airline passenger service on a Northwest Affected City–Pair Route originating or terminating at Northwest's Detroit hub airport ("DTW"), excluding any shared hub-to-hub routes. The class period begins on October 10, 1992 and continues to date.

### C. *Northwest/Memphis Subclass*

All persons or entities (excluding Defendants and their parents, subsidiaries, and affiliates) who purchased from Defendant Northwest or its agent one or more unrestricted, full fare tickets for airline passenger service on a Northwest Affected City–Pair Route originating or terminating at Northwest's Memphis hub airport ("MEM"), excluding any shared hub-to-hub routes. The class period begins on October 10, 1992 and continues to date.

### D. *US Airways/Pittsburgh Subclass*

All persons or entities (excluding Defendants and their parents, subsidiaries, and affiliates) who purchased from Defendant U.S. Airways or its agent one or more unrestricted, full fare tickets for airline passenger service on a U.S. Airways Affected City–Pair Route originating or terminating at U.S. Airways' Pittsburgh hub airport ("PIT"), excluding any shared hub-to-hub routes. The class period begins on May 18, 1995 and continues to date.

### E. *US Airways/Charlotte Subclass*

All persons or entities (excluding Defendants and their parents, subsidiaries, and affiliates) who purchased from Defendant U.S. Airways or its agent one or more unrestricted, full fare tickets for airline passenger service on a U.S. Airways Affected City–Pair Route originating or terminating at U.S. Airways' Charlotte hub airport ("CLT"), excluding any shared hub-to-hub routes. The class period begins on May 18, 1995 and continues to date.

### F. *Delta/Atlanta Subclass*

All persons or entities (excluding Defendants and their parents, subsidiaries, and affiliates) who purchased from Defendant Delta or its agent one or more unrestricted, full fare tickets for airline passenger service on a Delta Affected City–Pair Route originating or terminating at Delta's Atlanta hub airport ("ATL"), excluding any shared hub-to-hub routes. The class period begins on June 11, 1995 and continues to date.

### G. *Delta/Cincinnati Subclass*

All persons or entities (excluding Defendants and their parents, subsidiaries, and affiliates) who purchased from Defendant Delta or its agent one or more unrestricted, full fare tickets for airline passenger service on a Delta Affected City–Pair Route originating or terminating at Delta's Cincinnati hub airport ("CVG"), excluding any shared hub-to-hub routes. The class period begins on June 11, 1995 and continues to date.

Following Plaintiffs' identification of class representatives for each of these classes, and following Defendants' opportunity to raise specific objections as to the suitability of these proposed representatives, the Court will certify class representatives for each of the classes established through this Order, and will formally certify Plaintiffs' counsel to prosecute the interests of these classes.

SO ORDERED.

